Randy M. Kornfeld, Esq. (RMK 9908)
Oren L. Sibony, Esq. (OLS 3519)
Kornfeld & Associates, P.C.
*Attorneys for Plaintiff*
570 Lexington Avenue, 17th Floor
New York, NY 10022
(212) 759-6767

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JIM MOORE

                         Plaintiff,

          - against -

BRITISH BROADCASTING COMPANY,
DISCOVERY COMMUNICATIONS, LLC,
WALL TO WALL PRODUCTIONS, INC.,
MAGNOLIA PICTURES, INC.,
POLARIS IMAGES CORPORATION,
THE WORKS MEDIA GROUP, PLC.,
JP PAPPIS, and SIMON CHINN

                         Defendants.
----------------------------------------------------------------x

**COMPLAINT**

JURY TRIAL
DEMANDED

Index No. 08cv3840 (JGK)

Plaintiff JIM MOORE by his attorneys, KORNFELD & ASSOCIATES, P.C., alleges as follows:

**PARTIES**

1. At all times hereinafter mentioned, Jim Moore ("MOORE") was, and still is, a highly regarded professional photographer.

2. At all times hereinafter mentioned, plaintiff was and still is, doing business in the State of New York and is actively engaged in the photography business in the State of New York and elsewhere.

3. The defendant BRITISH BROADCASTING CORPORATION is, upon

information and belief, a British corporation chartered by Parliament and transacting and/or doing business within the State of New York.

4. The defendant DISCOVERY COMMUNICATIONS, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Delaware and transacting and/or doing business within the State of New York.

5. The defendant WALL TO WALL PRODUCTIONS, INC. is, upon information and belief, a British corporation located at 8-9 Spring Place, Kentish Town, London NW5 3ER, England, and transacting and/or doing business within the State of New York.

6. The defendant MAGNOLIA PICTURES, LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of Delaware and transacting and/or doing business within the State of New York.

7. The defendant THE WORKS MEDIA GROUP, PLC is, upon information and belief, a British corporation with an office at Portland House, 4th Floor, 4 Great Portland Street, London W1W 8QJ, England.

8. The defendant POLARIS IMAGES CORPORATION is, upon information and belief, a corporation organized and existing under the laws of the State of New York with the address 259 West 30th Street, 13th Floor, New York, NY 10001.

9. The defendant JP PAPPIS is, upon information and belief, the founder, president and principal shareholder of defendant POLARIS IMAGES CORPORATION.

10. The defendant SIMON CHINN is, upon information and belief, an employee of defendant WALL TO WALL PRODUCTIONS, INC.

## JURISDICTION AND VENUE

11. This is a civil action for copyright infringement.

12. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1338 and 1367, et al.

13. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. 1391, et al. in that a substantial part of the events giving rise to the claims occurred in this district.

## BACKGROUND

### MOORE'S BUSINESS

14. MOORE is a successful photographer of considerable reputation.

15. MOORE graduated the New York University School of Film in 1970. MOORE's images have been used in numerous books and publications, as well as in exhibitions at Lincoln Center and throughout the country.

16. The copyrights and registrations in all of the images relevant herein belong to MOORE and no transfer, sale or assignment of same has taken place with respect to the images which are the subject of this complaint to any person or entity other than the plaintiff.

17. MOORE, both directly and through his authorized agents, licenses and leases rights of reproduction, in the United States and throughout the world, to original photographic transparencies, photographs, slides, digital images and visual reproductions created by MOORE.

18. MOORE derives income from fees received resulting from such licensing.

### PHOTOGRAPHS OF PHILIPPE PETIT

19. In or about 1974, MOORE photographed the events leading up to and following his friend Philippe Petit walking on a wire from one of the two towers of the World Trade Center to the other, said by some to be the greatest "stunt" in the history of the world.

20. A sample of MOORE's photographs involving Mr. Petit's stunt (the "Unlicensed

Images"), all of which are currently being infringed, are annexed as Exhibit A to the accompanying Order to Show Cause

21. MOORE holds the sole copyrights in the Unlicensed Images and registered the Unlicensed Images as follows:

World Trade Center/Philippe Petit, on January 14, 2008, copyright registration VAu 1-959-300. Said registration is annexed hereto as **Exhibit A**.

POLARIS AND WALL TO WALL'S SCHEME

22. In or about 2002, MOORE permitted defendant POLARIS IMAGES CORPORATION ("Polaris"), a company which is engaged in the business of licensing and syndicating photographic images for use by third parties and generates income and fees thereby, to license some of the Unlicensed Images to Steeplechase Films for a documentary called "the Center of the World" about Mr. Petit's stunt. MOORE transmitted originals of some of the Unlicensed Images to Polaris for this purpose.

23. Upon information and belief, several years later, in or about 2007, Polaris was approached regarding the use of the Unlicensed Images in the 2008 film "Man on Wire," a documentary about Mr. Petit's stunt.

24. Polaris was still in possession of the originals of some of the Unlicensed Images from back in 2002. MOORE transmitted originals of the remainder of the Unlicensed Images to Polaris in 2007 for the sole purpose of allowing Polaris to negotiate with the production companies for "Man on Wire." It was contemplated that the production companies would pay top dollar for MOORE's images, which were indispensable to the film.

25. Defendant WALL TO WALL PRODUCTIONS, INC. ("Wall to Wall"), a credited production company for the film "Man on Wire," negotiated with MOORE and Polaris

regarding the use of the Unlicensed Images.

26. Upon information and belief and unbeknownst to Moore, Polaris needed funds immediately in order to "make payroll" and attempted to quickly negotiate a deal unfavorable to MOORE in order to receive an influx of cash.

27. Upon MOORE's learning of a proposed unfavorable deal with Wall to Wall, on or about March 4, 2008, MOORE, on his own and through his attorneys and in no uncertain terms, fired Polaris and Mr. Pappis and notified Wall to Wall that Polaris and Mr. Pappis did not represent MOORE with respect to the Unlicensed Images.

28. Notwithstanding their lack of authority with respect to MOORE's Unlicensed Images, Polaris and Wall to Wall secretly entered into a licensing agreement dated March 10, 2008 (the "Unauthorized Licensing Agreement"), almost a week after MOORE unequivocally made clear that he did not and would not consent to any such licensing agreement.

29. The Unauthorized Licensing Agreement provided for licensing fees well below any reasonable industry standard. Upon information and belief, Mr. Pappis entered into the Unauthorized Licensing Agreement without authorization and for such meager consideration because Polaris was in desperate need of cash and needed to "make payroll."

30. Upon information and belief, the film "Man on Wire" was edited using MOORE's Unlicensed Images both before and after Polaris and Wall to Wall entered into the Unauthorized Licensing Agreement. Upon information and belief, the Unauthorized Licensing Agreement was created by Polaris and Wall to Wall in order to, after the fact, justify and falsely authorize the use of MOORE's Unlicensed Images in "Man on Wire."

MOORE DEMANDS DEFENDANTS CEASE AND DESIST

31. Upon discovering the use of his Unlicensed Images by the defendants, MOORE,

5

on or about March 28, 2008, via fax, requested that all defendants immediately cease and desist in the use of MOORE's Unlicensed Images.

32. In response, defendants conceded, and it is undisputed, that the Unlicensed Images are copyrighted by and belong to MOORE and are being used in "Man on Wire." However, despite due demand, the defendants refused to cease and desist in the use of MOORE's Unlicensed Images and plan to show "Man on Wire" to the public with MOORE's Unlicensed Images at the Tribeca Film Festival, which begins on April 24, 2008. Defendants have also used MOORE's Unlicensed Images at film festivals, on various websites and in promotional materials.

33. Defendants, upon information and belief, sought to cover their tracks by having defendant Polaris send a check dated March 31, 2008 in the amount of $16,187.50 to Mr. Moore by Federal Express on March 31, 2008 after defendants had already received MOORE's cease and desist letters dated March 28, 2008.

34. MOORE has rejected the check sent by Polaris without cashing, depositing or otherwise negotiating it.

## AS AND FOR A FIRST CAUSE OF ACTION
Copyright Infringement as Against All Defendants

35. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" through "34" as if fully set forth herein.

36. The use(s) of the Unlicensed Images by the defendants was without the plaintiff's authorization, license or consent.

37. The use of each one of the Unlicensed Images constitutes a separate and distinct infringement of the plaintiff's copyright. Defendants have, upon information and belief, infringed at least forty-seven of plaintiff's images.

38. The aforementioned acts of the Defendant constitute federal statutory copyright infringement under the Copyright Act in violation of the exclusive rights granted MOORE as copyright holder.

39. Defendants' use of the Unlicensed Images was negligent, willful, intentional and in bad faith.

40. As a result of defendants' acts, MOORE has been and will continue to be damaged in an amount as yet undetermined.

41. MOORE is further entitled to damages, attorneys' fees and costs under the Copyright Act, given the willful, intentional, malicious and bad faith nature of defendants' copyright infringement.

### AS AND FOR A SECOND CAUSE OF ACTION
Vicarious Copyright Infringement as Against Defendants Pappis and Chinn

42. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. Upon information and belief defendant JP Pappis is the president, founder and principal shareholder of defendant Polaris.

44. Upon information and belief, defendant Simon Chinn is an employee of defendant Wall to Wall.

45. As of March 4, 2008, JP Pappis and Simon Chinn received notice that MOORE did not agree to license the Unlicensed Images.

46. Mr. Pappis and Mr. Chinn both had the right and the ability to supervise and prevent the infringing conduct.

47. Instead, Mr. Pappis and Mr. Chinn, with full knowledge of MOORE's desire not to license the Unlicensed Images, entered in the Unauthorized Licensing Agreement anyway and

caused MOORE's images to be included in "Man on Wire."

48. Mr. Pappis and Mr. Chinn both stood to gain financially by entering into the Unauthorized Licensing Agreement which purported to pay MOORE well below any reasonable industry standard.

49. Mr. Pappis and Mr. Chinn's conduct was willful, intentional and in bad faith.

50. As a result of Mr. Pappis and Mr. Chinn's acts, MOORE has been damaged in an amount as yet undetermined.

51. MOORE is further entitled to damages, attorneys' fees and costs under the Copyright Act, given the willful, intentional, malicious and bad faith nature of Defendant's copyright infringement.

### AS AND FOR A THIRD CAUSE OF ACTION
Contributory Copyright Infringement as Against Defendants Pappis, Chinn, Polaris and Wall to Wall

52. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

53. Upon information and belief, Mr. Pappis and Mr. Chinn (and consequently Polaris and Wall to Wall) knew that MOORE's Unlicensed Images were being included in "Man on Wire."

54. Mr. Pappis, Mr. Chinn, Polaris and Wall to Wall controlled whether or not MOORE's Unlicensed Images were to be included in "Man on Wire."

55. Although they received notice from MOORE not to use MOORE's Unlicensed Images in "Man on Wire," Mr. Pappis, Mr. Chinn, Polaris and Wall to Wall thereafter executed the Unauthorized Licensing Agreement and, without permission, purported to authorize the use of the Unlicensed Images to the defendants involved in the production of "Man on Wire." The

8

defendants other than Mr. Pappis, Mr. Chin, Polaris and Wall to Wall would not have infringed on MOORE's copyright were it not for this unpermitted and illegal "authorization."

56. Mr. Pappis, Mr. Chinn, Polaris and Wall to Wall's conduct was willful, intentional and in bad faith.

57. As a result of Mr. Pappis, Mr. Chinn, Polaris and Wall to Wall's acts, MOORE has been damaged in an amount as yet undetermined.

58. MOORE is further entitled to damages, attorneys' fees and costs under the Copyright Act, given the willful, intentional, malicious and bad faith nature of Defendant's copyright infringement.

### AS AND FOR A FOURTH CAUSE OF ACTION
Negligence as Against Defendants Pappis and Polaris

59. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 58 as if fully set forth herein.

60. As MOORE's agent and/or representative, Mr. Pappis had a duty to give MOORE correct information about Mr. Pappis's abilities and intentions as an agent and/or representative.

61. In or about 2007, Mr. Pappis falsely represented to MOORE that Mr. Pappis was an "expert" in negotiating the highest fee possible for his photographers and would obtain this highest fee possible for MOORE's Unlicensed Images, a representation Mr. Pappis should have known was incorrect at the time.

62. Mr. Pappis knew that MOORE's decision whether or not to allow Mr. Pappis and Polaris to negotiate the use of MOORE's Unlicensed Images was an important and serious decision for MOORE and that MOORE would rely on Mr. Pappis's representations in this regard and would not turn over the Unlicensed Images without such a representation.

63. MOORE relied on the false representation that Mr. Pappis would obtain the

9

highest price possible for MOORE's Unlicensed Images to MOORE's detriment, resulting in Mr. Pappis attempting to and illegally licensing MOORE's Unlicensed Images for a price that not only failed to meet the "highest price possible," but also failed to even come within the lower limit of a reasonable industry standard price.

64. Mr. Pappis and Polaris had a duty to license MOORE's Unlicensed Images for a reasonable price.

65. Mr. Pappis and Polaris breached that duty by entering into the Unauthorized Licensing Agreement.

66. MOORE has been damaged by these acts in an amount as yet undetermined.

### AS AND FOR A FIFTH CAUSE OF ACTION
Fraud as Against Defendants Pappis and Polaris

67. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68. Upon information and belief, Mr. Pappis and Polaris represented to MOORE that Mr. Pappis and Polaris would obtain the highest fee possible for MOORE's Unlicensed Images.

69. Mr. Pappis and Polaris also failed to inform MOORE that Mr. Pappis and Polaris were finalizing negotiations on the Unauthorized Licensing Agreement for a fee well below any reasonable industry standard.

70. Mr. Pappis and Polaris were duty-bound to disclose the negotiations surrounding the Unauthorized Licensing Agreement due to Mr. Pappis and Polaris's ambiguous statement that Mr. Pappis and Polaris were negotiating the best fee possible for MOORE's Unlicensed Images, due to Mr. Pappis and Polaris's fiduciary relationship with MOORE and due to Mr. Pappis and Polaris's superior knowledge of the status of the negotiations.

71. Mr. Pappis and Polaris knew their misrepresentations were false and that their

omissions caused MOORE to have a false belief.

72. Mr. Pappis and Polaris made these misrepresentations and omissions for the purpose of inducing MOORE's reliance; Mr. Pappis and Polaris could not have entered into the Unauthorized Licensing Agreement for Mr. Pappis and Polaris's financial benefit without keeping MOORE at bay by making such misrepresentations and omissions, which misrepresentations and omissions caused MOORE to lose a reasonable licensing fee.

73. MOORE relied on Mr. Pappis and Polaris's representations, as well as on MOORE's beliefs caused by Mr. Pappis and Polaris's omissions.

74. MOORE has been damaged thereby in an amount as yet undetermined.

### AS AND FOR A SIXTH CAUSE OF ACTION
Breach of Fiduciary Duty as Against Defendants Pappis and Polaris

75. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

76. Mr. Pappis and Polaris solicited and accepted the power transferred by MOORE when MOORE gave Polaris and Mr. Pappis MOORE's Unlicensed Images. Polaris and Mr. Pappis agreed to be MOORE's representative in the licensing of the Unlicensed Images. As a representative, Mr. Pappis and Polaris owed MOORE a fiduciary duty to represent MOORE's interest first and foremost and paramount to their own.

77. After transferring his Unlicensed Images, MOORE was in a vulnerable position while Polaris and Mr. Pappis were empowered by possessing MOORE's valuable Unlicensed Images. Polaris and Mr. Pappis kept MOORE in the dark regarding their own precarious financial condition and their attempts to license the photographs without MOORE's knowledge and consent.

78. MOORE was prevented from protecting himself from Polaris and Mr. Pappis

11

entering into the Unauthorized Licensing Agreement by virtue of Polaris and Mr. Pappis's possession of the Unlicensed Images.

79.  Due to Polaris and Mr. Pappis's position of superior power over MOORE's position of vulnerability, Polaris and Mr. Pappis owed MOORE a fiduciary duty.

80.  Polaris and Mr. Pappis knowingly breached this fiduciary duty by entering into the Unauthorized Licensing Agreement without MOORE's consent and in direct contradiction of MOORE's instructions.

81.  MOORE has been damaged thereby in an amount as yet undetermined.

## AS AND FOR A SEVENTH CAUSE OF ACTION
Aiding and Abetting Breach of Fiduciary Duty as Against Defendants Wall to Wall and Chinn

82.  Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 81 as if fully set forth herein.

83.  Mr. Pappis and Polaris breached their fiduciary duty to MOORE by entering into the Unauthorized Licensing Agreement to MOORE's detriment without MOORE's consent.

84.  Wall to Wall and Mr. Chinn knew that Mr. Pappis and Polaris were breaching their fiduciary duty to MOORE when Mr. Pappis and Polaris entered into the Unauthorized Licensing Agreement with Mr. Chinn and Wall to Wall because MOORE had recently and explicitly informed Wall to Wall and Mr. Chinn that Mr. Pappis and Polaris had no right to negotiate the use of the Unlicensed Images on MOORE's behalf.

85.  Wall to Wall and Mr. Chinn substantially assisted Mr. Pappis and Polaris in their breach of their fiduciary duty owed to MOORE by entering into the Unauthorized Licensing Agreement with Mr. Pappis and Polaris. Mr. Pappis and Polaris could not have illegally profited from the license of MOORE's images without Wall to Wall and Mr. Chinn's participation both in entering into the Unauthorized Licensing Agreement and in transmitting the Unlicensed

Images to the creators and distributors of "Man on Wire."

86. MOORE has been damaged thereby in an amount as yet undetermined.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
Breach of Contract as Against Defendants Pappis and Polaris

87. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 86 as if fully set forth herein.

88. Polaris and MOORE had a contract for Polaris and Mr. Pappis to represent MOORE and negotiate a profitable license for MOORE's Unlicensed Images at the highest price subject to MOORE's agreement and consent.

89. MOORE performed his part of the contract by providing the Unlicensed Images to Polaris.

90. Polaris and Mr. Pappis breached the contract by not negotiating a reasonable price and not using their best efforts to negotiate a profitable licensing agreement and instead, upon information and belief, Mr. Pappis, desperately in need of immediate cash, engaged in a "firesale" of the Unlicensed Images for well below any reasonable market value.

91. By virtue of Mr. Pappis and Polaris's breach, MOORE has been damaged in an amount as of yet undetermined.

### AS AND FOR AN NINTH CAUSE OF ACTION
Breach of the Implied Covenant of Good Faith and Fair Dealing
as Against Defendants Pappis and Polaris

92. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 91 as if fully set forth herein.

93. Polaris's contract with MOORE implied a pledge that neither party would do anything to injure the rights of the other to receive the fruits of the contract.

94. Polaris and Mr. Pappis breached this covenant by illegally licensing MOORE's

13

Unlicensed Images for a price well below any reasonable industry standard in order to "make payroll."

95. By virtue of Mr. Pappis and Polaris's breach, MOORE has been damaged in an amount as of yet undetermined.

### AS AND FOR A TENTH CAUSE OF ACTION
Unjust Enrichment as Against All Defendants

96. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 95 as if fully set forth herein.

97. All defendants unjustly benefited by the inclusion in "Man on Wire" of MOORE's Unlicensed Images to MOORE's detriment.

98. MOORE's Unlicensed Images include some of the most unique and striking photographs taken of Petit and his high-wire walk across the World Trade Center rooftops.

99. MOORE's Unlicensed Images were and are essential to the film "Man on Wire," which is based upon the precise subject matter of MOORE's Unlicensed Images

100. Equity and good conscience require that MOORE share in defendants' profits derived from the unauthorized use of MOORE's Unlicensed Images.

### JURY DEMAND

101. Plaintiff requests a trial by jury of all issues.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment with respect to their Complaint as follows:

ON COUNTS ONE, TWO AND THREE:

A. Declaring that all defendants have willfully violated, among others, 17 U.S.C. §§ 106 by infringing the copyright rights of MOORE in the Unlicensed Images and awarding statutory damages of $150,000 per work infringed or actual damages as may be proved at trial;

B.   Granting as against all defendants, their agents, servants, officers, employees, and all those acting under their control and/or on their behalf and/or in concert with them, a preliminary and permanent injunction:

(i) prohibiting them from publishing, transmitting, displaying, employing, reproducing, disseminating or in any manner employing any of the Unlicensed Images created by MOORE and/or in which the applicable copyright registrations as set forth hereinbelow are held in the name(s) of MOORE including but not limited to the images referenced in the following registrations held by and filed with the United States Copyright office:

- World Trade Center / Philippe Petit – Jan. 14, 2008 copyright registration VAu 959-300

(ii) directing them to file with the Court and serve on Plaintiff, within thirty days after the entry of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(iii) directing them to deliver up for destruction any and all materials in their possession or control all discs, tapes, plates, molds, matrices, masters, and other means of producing, reproducing, applying and/or transmitting the Unlicensed Images.

(iv) requiring them to take steps to withdraw all public statements, advertising and promotional materials related to the Unlicensed Images and to ensure that they are not used for any advertising, publicity, distribution, or other media purpose in connection with or in reference to any product manufactured, sold and/or distributed by them.

(v) requiring Defendants to place suitable corrective advertisements in all publications and mediums used to promote its products, and to issue suitable press releases to all organizations used by Defendants to promote their products, informing those organizations that their use of MOORE's Unlicensed Images was unauthorized and that MOORE owns and

markets all commercial rights in and to the Unlicensed Images

    C.    Ordering that all defendants be required to pay MOORE's costs, disbursements, expenses, and reasonable attorney's fees;

    D.    Ordering pre-judgment interest on all sums due; and

    E.    Ordering that MOORE shall have such other and further relief as is just and proper.

ON COUNT FOUR:

    A.    An award of damages to be ultimately determined by this Honorable Court.

    B.    Prejudgment interest on all sums due.

    C.    Such other and further relief as this Court deems just and proper.

ON COUNT FIVE:

    A.    An award of damages to be ultimately determined by this Honorable Court.

    B.    Prejudgment interest on all sums due.

    C.    Such other and further relief as this Court deems just and proper.

ON COUNT SIX:

    A.    An award of damages to be ultimately determined by this Honorable Court.

    B.    Prejudgment interest on all sums due.

    C.    Such other and further relief as this Court deems just and proper.

ON COUNT SEVEN:

    A.    An award of damages to be ultimately determined by this Honorable Court.

    B.    Prejudgment interest on all sums due.

    C.    Such other and further relief as this Court deems just and proper.

ON COUNT EIGHT:

    A.    An award of damages to be ultimately determined by this Honorable Court.

    B.    Prejudgment interest on all sums due.

    C.    Such other and further relief as this Court deems just and proper.

ON COUNT NINE:

    A.    An award of damages to be ultimately determined by this Honorable Court.

    B.    Prejudgment interest on all sums due.

    C.    Such other and further relief as this Court deems just and proper.

ON COUNT TEN:

    A.    An award of damages to be ultimately determined by this Honorable Court.

    B.    Prejudgment interest on all sums due.

    C.    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 22, 2008

Yours, etc.

KORNFELD & ASSOCIATES, P.C.

By: _____
    Randy Kornfeld (RK 9908)
    Oren Sibony (OS 3519)
    570 Lexington Avenue, 17th Floor
    New York, New York, 10022
    (212) 759-6767

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**VAu 959-300**

**Effective date of registration:**

January 14, 2008

## Title
Title of Work: World Trade Center/Philippe Petit

## Completion/Publication
Year of Completion: 1974

## Author
- Author: Jim R. Moore
- Author Created: Photographs
- Citizen of: United States        Domiciled in: United States

## Copyright claimant
Copyright Claimant: Jim R. Moore
52 Windsor Place, #1, Brooklyn, NY, 11215

## Rights and Permissions
Name: Jim R Moore
Address: 52 Windsor Place
Apt. 1
Brooklyn, NY 11215-5611 United States

## Certification
Name: Jim R Moore
Date: January 3, 2008

Correspondence: Yes

IPN#:

Registration #:   VAU000959300

Service Request #:   1-29652321

Jim R Moore
52 Windsor Place
Apt. 1
Brooklyn, NY 11215-5611  United States